

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**RASHAD DONNELL HARRIS,**

               **Petitioner,**

v.                                                       Criminal No. 2:17-CR-109

**UNITED STATES OF AMERICA,**

               **Respondent.**

*MEMORANDUM OPINION AND ORDER*

Before the Court is Rashad Donnell Harris's ("Petitioner") Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). Pet'r's Mot. Compassion. Release, ECF Nos. 37, 42 ("Pet'r's Mot."). The Government opposed the motion and Petitioner did not reply. Gov't Resp. Opp. to Pet'r's Mot. Compassion. Release, ECF No. 43 ("Resp. Opp."). This matter is now ripe for judicial determination. For the reasons below, Petitioner's motion is **DENIED**.

### I.    FACTUAL AND PROCEDURAL HISTORY

On June 7, 2017, Petitioner was named in Criminal Complaint. Crim. Compl., ECF No. 1. On July 18, 2017, Petitioner waived indictment and pled guilty to a three-count Criminal Information, charging him with Conspiracy to affect Commerce by Robbery of Commercial Institutions, in violation of 18 U.S.C. § 1951 (Count One); affecting Commerce by means of Robbery of a Commercial Establishment, in violation of 18 U.S.C. § 1951 (Count Two); and brandishing a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Three). *See* ECF Nos. 13, 14. On November 27, 2017, the Court sentenced Petitioner to a total sentence of 180 months imprisonment. J., ECF No. 24. The sentence included

96 months on Count One, followed by three years of supervised release; 96 months on Count Two to be served concurrently with Count One, followed by three years of supervised release; and 84 months on Count Three to be served consecutive to Count One, followed by five years of supervised release to be served concurrently with Count One. *Id.* On August 10, 2022, Petitioner filed the instant motion for compassionate relief. ECF No. 37. Petitioner, through counsel, filed a memorandum in support of his motion on August 30, 2022. ECF No. 42. On September 9, 2022, the Government filed its response in opposition. ECF No. 43.

According to his Presentence Investigation Report ("PSR"), Petitioner and his co-conspirators committed several armed robberies of commercial establishments and banks in January 2017. Present. Investig. Rep. ¶¶ 5-7, ECF No. 20 ("PSR"). During the armed robberies, Petitioner brandished firearms and demanded money from the different establishments, recovering at least $12,428.38 in U.S. currency. *Id.* ¶ 9. The PSR attributed the Petitioner with aggravating enhancements for brandishing a firearm during the robbery, physically restraining employees to facilitate the commission of the robbery, targeting a financial institution, and stealing less than $20,000 in U.S. currency. *Id.* at ¶¶ 25-27, 39.

In his PSR, Petitioner reported no physical, mental health, or substance abuse issues. *Id.* at 20-21. The PSR assessed Petitioner with a total offense level of 26, a criminal history category of IV, and a recommended Guidelines sentence of 92-115 months on Counts One and Two, plus 84 months consecutive on Count III. *Id.* at 22. Petitioner is currently incarcerated at USP Lee with a projected release date of December 22, 2029.[1]

On May 18, 2022, Petitioner submitted a Request for Reduction in Sentence to the Warden. Pet'r's Mot. Exh. 1. On May 24, 2022 the Warden denied Petitioner's request. *Id.* at Exh. 2.

---

[1] *See also* Federal Bureau of Prisons, "Find An Inmate," *BOP.gov*, https://www.bop.gov/inmatelocl/ (last visited Sept. 26, 2022) (listing Petitioner's release date as June 4, 2032).

Accordingly, on June 10, 2022, Petitioner filed a letter requesting counsel in order to file a compassionate release motion. ECF No. 37. On August 30, 2022, Petitioner filed the motion through counsel. Pet'r Mot. On September 9, 2022, the Government responded in opposition. Resp. Opp. Petitioner did not reply.

## II. LEGAL STANDARD

### A. The Threshold Requirement Standard

A petitioner may bring a motion to modify their sentence after they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [petitioner]'s behalf or the lapse of 30 days from the receipt of such a request by the warden of the [petitioner]'s facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release has two options after requesting that the Bureau of Prisons ("BOP") bring a motion on their behalf: (1) exhaust their administrative remedies; or (2) wait 30 days from the date of their initial request to the BOP. *United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) ("§ 3582(c)(1)(A) outlines two routes – one of which does not require exhaustion of administrative remedies."). In other words, a petitioner may satisfy the threshold requirement if they "request[] the Bureau of Prisons to bring a motion on their behalf and *either* fully exhaust[] all administrative rights to appeal the Bureau's decision *or* wait[] 30 days from the date of their initial request to file a motion in the district court." *Id.* (emphasis in original). Thus, a petitioner who made a request to the BOP at least 30 days prior may seek compassionate release with the district court whether the BOP has ruled on the request or not. *Id.* (holding petitioner satisfied the threshold requirement by filing his compassionate release motion 149 days after submitting a request to the warden, which the warden denied) (citing *United States v. Garrett*, 15 F.4th 335, 338 (5th Cir. 2021); *United States v. Harris*, 973 F.3d 170, 171 (3rd Cir. 2020); and *United States*

v. *Alam*, 960 F.3d 831, 833 (6th Cir. 2020)). Moreover, the threshold requirement is a non-jurisdictional claim-processing rule, and thus may be waived or forfeited if not timely raised. *Id.* at 129-30 (collecting cases from sister circuits holding the same).

## B. The Compassionate Release Standard

As amended by the FIRST STEP Act, a court may modify a term of imprisonment by motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before the FIRST STEP Act was passed, the Sentencing Commission provided that a sentence may be modified because of the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

U.S.S.G. § 1B1.13 is now outdated, however, following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020); *see also United States v. Lisi*, 440 F. Supp. 3d 246, 250 (S.D.N.Y. 2020), *reconsideration denied*, No. 15 CR. 457 (KPF),

2020 WL 1331955 (S.D.N.Y. Mar. 23, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release . . . [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts . . . ."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive."). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

### III. DISCUSSION

#### A. The Threshold Requirement

The Court finds that Petitioner satisfied the threshold requirement. The Government does not contest such. *See* Resp. Opp. On May 18, 2022, Petitioner submitted a Request for Reduction in Sentence to the Warden. Pet'r's Mot. Exh. 1. On May 24, 2022, the Warden denied Petitioner's request. *Id.* at Exh. 2. Accordingly, on August 30, 2022, Petitioner filed the motion through counsel. Pet'r Mot. Thus, more than 30 days passed since Petitioner filed his request.

#### B. Petitioner's Compassionate Release Request

The Court now turns to whether Petitioner has set forth extraordinary and compelling reasons to modify his sentence. Petitioner argues that the conditions of confinement at his BOP facility warrants compassionate release given the ongoing impact of COVID-19. *Id.* at 5-11. In addition, Petitioner argues that the sentencing factors under 18 U.S.C. § 3553(a) support compassionate release. *Id.* at 4. Together, Petitioner alleges these circumstances constitute extraordinary and compelling reasons that warrants his request for the Court to resentence him to

time served. *Id.* Therefore, Petitioner asks the Court to resentence him to time served and five years of supervised release on each count to run concurrently. *Id.* at 2.

First, Petitioner does not show a potential susceptibility to serious health risks from COVID-19. The Court notes that, at age 33, Petitioner does not allege that he faces any underlying medical conditions that make him especially susceptible to COVID-19. In addition, Petitioner's medical records neither document nor indicate any health condition that make him particularly susceptible to serious illness from contracting COVID-19. Resp. Opp. at Exh. 2. Moreover, it appears that Petitioner has received the Pfizer vaccine. *Id.*

Second, Petitioner does show a potential risk of contracting the disease at his prison facility. Petitioner's Motion does not demonstrate that he has a particularized risk of contracting COVID-19 at USP Lee, or that there would be less risk of contracting COVID-19 if he were released. USP Lee houses approximately 1,452 inmates. Resp. Opp. at 9. As of May 11, 2023, zero inmates and staff members at USP Lee are positive for COVID-19.[2] *See United States v. Woolridge*, No. 3:09cr156 (DJN), 2021 WL 415131, at *5 (E.D. Va. Feb. 5, 2021) (finding no particularized risk where there were only eight active cases of COVID-19 at the petitioner's facility); *see also United States v. Wilkins*, No. 7:17-cr-407-JMC-1, 2021 WL 194311, at *3 (D.S.C. Jan. 20, 2021) (finding no particularized risk where there were only ten active cases at the petitioner's facility). Although Petitioner notes the lingering risk of contracting the coronavirus at his prison facility, as of May 11, 2023, the BOP reports that 442 inmates and 238 staff have contracted and recovered from COVID-19.[3] On the other hand, Petitioner proposes living with his family in Portsmouth, Virginia, a city that has an average of 4 new COVID-19 cases a day.[4]

---

[2] *COVID-19 Cases*, FED. BUR. PRISONS (May 11, 2023), https://www.bop.gov/coronavirus/covid19_statistics.html.
[3] *Id.*.
[4] *Tracking Coronavirus in Portsmouth, Va.: Latest Map and Case Count*, N.Y. TIMES (May 11, 2023), https://www.nytimes.com/interactive/2021/us/portsmouth-virginia-covid-cases.html.

Although the Court recognizes and in no way minimizes the harsh realities that incarcerated individuals have faced during the pandemic, Petitioner does not mention any potential harsher conditions of confinement that are unique to him for purposes of compassionate release. *See United States v. Ramirez*, 2021 WL 5233512, at *5 (S.D.N.Y. Nov. 10, 2021) ("If challenging the conditions of confinement caused by the pandemic warranted a sentence reduction here, essentially every inmate who has been in BOP custody at any time since March 2020 would be entitled to a sentence reduction.").

Third, overall, the § 3553(a) factors do not weigh in favor of Petitioner's compassionate release. The seriousness of Petitioner's conduct for his underlying armed robbery offense remains unchanged. In addition, Petitioner committed the instant offense while under a criminal justice sentence for Grand Larceny, Statutory Burglary and Attempted Carjacking and faces a state detainer for a potential probation violation upon his release. PSR at 17 ¶ 78; Pet'r's Mot. at 14, Exh. 3. Further, while incarcerated Petitioner has received three disciplinary sanctions for various conduct. Resp. Opp. at Exh. 4. This trend cuts against Petitioner's argument that he is less likely to recidivate. Pet'r's Mot. at 11-12; 14-15.

Although Petitioner argues that he would be able to better protect himself against COVID-19 outside of prison, his release plan does not adequately protect the public from the potential of a subsequent offense. If released, Petitioner plans to live with his sister in Portsmouth, VA. ECF No. 37 at 12-17. Petitioner also notes that he has secured employment with the Norfolk Naval Shipyard, with his sister as his employer. *Id.* With this plan, however, Petitioner does not explain or elaborate on how his release would provide a viable alternative to serving the remainder of his sentence. To his credit, Petitioner has completed various drug and education programs through the BOP. Pet'r's Mot. Ex. 3. However, as noted by sister courts, a "defendant's rehabilitation alone

proves insufficient to warrant a sentence reduction." *See United States v. Woolridge*, No. 3:09CR156 (DJN), 2021 WL 415131, at *7 (E.D. Va. Feb. 5, 2021); *see also United States v. Ahmad*, No. 1:11-cr-554-TSE, ECF No. 75 (E.D. Va. Apr. 8, 2021) (finding that the defendant's coursework did not support compassionate release, reasoning that "[i]t is not uncommon for a defendant to take educational classes to pass the time in prison"). Despite commendable evidence of Petitioner's rehabilitation, overall, the Court finds that the § 3553(a) factors do not weigh in Petitioner's favor and his release would not promote the respect for law or provide adequate deterrence. Critically, Petitioner also did not show extraordinary or compelling reasons for release as a result of COVID-19. Therefore, Petitioner does not qualify for compassionate release.

### IV.  CONCLUSION

For the foregoing reasons, Petitioner has not shown an extraordinary and compelling reason to grant compassionate release. Thus, Petitioner's Motion for Compassionate Release, ECF No. 42, is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Norfolk, Virginia
May 17, 2023

Raymond A. Jackson
United States District Judge